United States Court of Appeals,

Fifth Circuit.

No. 91–7164.

Adam Frederick CHAPMAN, Plaintiff–Appellant,

v.

POWERMATIC, INC., Defendant–Appellee.

Aug. 26, 1992.

Appeal from the United States District Court For the Northern District of Texas.

Before GOLDBERG, JONES, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Adam Frederick Chapman (Chapman), a student at Duncanville High School in Duncanville, Texas, was injured when his right hand came into contact with a wood planer in the wood-working shop of the high school. Shortly thereafter, on March 27, 1990, Chapman's attorney sent a letter to Powermatic, Inc., (Powermatic), the manufacturer of the wood planer, advising Powermatic that it was a potential defendant and that Chapman had incurred medical expenses in the amount of $67,196.48. Additionally, in April 1990, Chapman provided the investigative service hired by Powermatic with copies of Chapman's medical bills.[1]

On June 28, 1990, Chapman sued Powermatic in state court alleging numerous causes of action.[2] The petition was served on Powermatic on July 10, and Powermatic filed its answer on July 26. The petition revealed that there was complete diversity of citizenship between the two parties, but it did not plead for a specific amount of damages. On August 17, 1990, Chapman answered the first set of interrogatories that Powermatic had served on him in which Chapman stated that he had

[1]Before Chapman sued Powermatic the investigative service interviewed Chapman, took photographs of his injuries, obtained a copy of a report from his surgeon describing his injuries, and obtained copies of witnesses' statements.

[2]Chapman sued Powermatic under the theories of negligence, strict liability, breach of warranty, and the Deceptive Trade Practices Act.

suffered damages in excess of $800,000. On August 27, Powermatic filed a notice of removal in the United States District Court for the Northern District of Texas (the "USDC). In response, Chapman moved to have the case remanded to state court contending that Powermatic did not timely remove the case. The USDC denied Chapman's motion to remand holding that the "[d]efendant removed this case within 30 days from the time it received answers to interrogatories stating that the amount in controversy was over $50,000. This case was timely removed pursuant to 28 U.S.C. § 1446(b)." The case proceeded to trial before a jury; and at the conclusion of the trial, the jury found that Powermatic did not cause Chapman's injuries. The USDC entered a take nothing judgment on the jury's verdict. Chapman appeals the USDC's denial of his motion to remand.

DISCUSSION

Both parties agree that the requirements for diversity jurisdiction exist in this case: the "matter in controversy exceeds the sum or value of $50,000," and the parties are "citizens of different states." 28 U.S.C. § 1332(a). What the parties do not agree on, however, and what Chapman's appeal concerns, is whether Powermatic timely removed the case to federal court pursuant to 28 U.S.C. § 1446(b). Section 1446(b) provides in pertinent part that:

> [the] notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based....
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable....

In essence, when read as a whole, § 1446(b) provides a two-step test for determining whether a defendant timely removed a case. The first paragraph provides that if the case stated by the initial pleading is removable, then notice of removal must be filed within thirty days from the receipt of the initial pleading by the defendant; and the second paragraph provides, if the case stated by the initial pleading is not removable, then notice of removal must be filed within thirty days from the receipt of an amended pleading, motion, order, or other paper from which the defendant can ascertain that the

case is removable.

*A. Initial Pleading*

Relying on the first paragraph of § 1446(b), Chapman contends that the district court erred in not remanding the case to state court because Powermatic did not remove the case within thirty days from its receipt of the initial pleading. To support his contention that the district court erred Chapman argues that all pleadings fall into one of three categories: (1) removable, (2) nonremovable, and (3) indeterminate as to removability. The initial pleading in this case was indeterminate as to removability, Chapman contends, because it revealed that there was complete diversity of citizenship between the parties, but it pled for an indeterminate amount of damages.[3] When a pleading is indeterminate as to removability, Chapman contends, a defendant is under a duty to exercise due diligence in determining whether the case is in fact removable. Applying that duty of due diligence to the facts of the present case, Chapman contends that Powermatic was required under the first paragraph of § 1446(b) to remove the case within 30 days from its receipt of the initial pleading, because the initial pleading revealed that there was complete diversity of citizenship between the parties, and Powermatic knew or in the exercise of due diligence should have known that the amount

---

[3]Chapman's initial petition stated that he had "suffered damages in excess of the minimum jurisdictional limits of the court." A question exists whether there is a minimum jurisdictional limit in Texas district court, which is where the suit was initially filed, although one commentator has opined that the jurisdictional minimum is five hundred dollars. See W. Dorsaneo, 1 Tex.Lit.Guide § 2.01[3][b][ii] (1989); See also *City of Mesquite v. Moore,* 800 S.W.2d 617, 621 n. 1 (Tex.App.—Dallas 1990, no writ).

Texas Rule of Civil Procedure 47(b) states that "an original pleading ... shall contain (b) in all claims for unliquidated damages only the statement that the damages sought are within the jurisdictional limits of the court, ..."; See also La.Code Civ.Proc.Ann.Art. 893(A)(1) ("No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand. The prayer for relief shall be for such damages as are reasonable in the premises. If a specific amount of damages is necessary to establish the jurisdiction of the court, the right to a jury trial or for other purposes, a general allegation that the claim exceeds or is less than the requisite amount is sufficient.") In our opinion, neither T.R.C.P. 47(b) nor La.Code Civ.Proc.Ann. art. 893(A)(1) prohibit a plaintiff from alleging in his initial pleading that the damages exceed the minimum jurisdictional amount of the federal court.

in controversy exceeded $50,000.[4]

We have found no circuit court opinions that address whether a defendant is under a duty to exercise due diligence in determining the amount in controversy when the initial pleading does not reveal such an amount, and the district court opinions addressing this question are in disagreement.[5] In large part, Chapman bases his contention that Powermatic did not timely remove the case on the district court opinion of *Mielke v. Allstate Insurance Company,* 472 F.Supp. 851 (E.D.Mich.1979). In *Mielke,* the initial pleading of the plaintiff did not contain a specific demand for damages, however, before the defendant had received the initial pleading, the plaintiff had sent the defendant copies of medical bills and expenses that revealed that he was seeking damages in excess of the minimum jurisdictional amount of the federal court. Additionally, the defendant admitted that it had actual knowledge that the plaintiff was seeking damages in excess of the jurisdictional minimum. Forty-five days after receiving the initial pleading, but only thirty days after receiving an amended pleading revealing that the amount in controversy was in excess of five million dollars, the defendant removed the case. After removal, the district court remanded the case to state court holding that removal of the case was untimely because the defendant should have ascertained from the circumstance and the initial pleading that the defendant was seeking damages in excess of the minimum jurisdictional

---

[4]Powermatic tacitly concedes that it knew that the amount in controversy exceeded the $50,000 minimum jurisdictional limit of the federal court when it received the initial pleading.

[5]See e.g. *Mielke v. Allstate Insur. Comp.,* 472 F.Supp. 851 (E.D.Mich.1979); *Turner v. Wilson Foods Corp.,* 711 F.Supp. 624, 626 (N.D.Ga.1989) (initial pleading was held to put the defendant on notice that the amount in controversy exceeded $10,000 when the initial pleading alleged severe burns, permanent scarring, pain and suffering, and lifelong medical expenses, but did not specify an amount of damages); *Richman v. Zimmer, Inc.,* 644 F.Supp. 540, 542 (S.D.Fla.1986) (initial pleading that alleged serious personal injuries was held to place the defendant on notice that the case was removable, even though the plaintiff merely alleged that his damages exceeded the state court's minimum jurisdictional amount); *Lee v. Altamil Corp.,* 457 F.Supp. 979, 981 (M.D.Fla.1978) (initial pleading merely alleging that the plaintiff's damages exceeded the state jurisdictional minimum of $2,500 was held to adequately place the defendant on notice of the substantial damages involved); But see contra *Rowe v. Marder,* 750 F.Supp. 718, 721 (W.D.Pa.1990), *aff'd* 935 F.2d 1282 (3rd Cir.1991) (court held that "initial pleading" did not begin the running of the thirty day time period for removal when it did not allege a specific amount of damages, even though the defendant probably knew that the damages would exceed $50,000).

amount. The court stated that "there is no reason to allow a defendant additional time if the presence of grounds for removal are unambiguous in light of the defendant's knowledge and the claims made in the initial complaint." *Id.* at 853.

We disagree with the opinion of the district court in *Mielke,* and conclude that for the purposes of the first paragraph of § 1446(b), the thirty day time period in which a defendant must remove a case starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.[6] We adopt this rule because we conclude that it promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know. The rule announced in *Mielke,* which Chapman proposes that we adopt, in contrast, would needlessly inject uncertainty into a court's inquiry as to whether a defendant has timely removed a case, and as a result would require courts to expend needlessly their resources trying to determine what the defendant knew at the time it received the initial pleading and what the defendant would have known had it exercised due diligence. Moreover, the rule in *Mielke* would encourage defendants to remove prematurely cases in which the initial pleading does not affirmatively reveal that the amount in controversy is in excess of $50,000 so as to be sure that they do not accidentally waive their right to have the case tried in a federal court. We believe the better policy is to focus the parties' and the court's attention on what the initial pleading sets forth, by adopting a bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount.

---

[6]Should a defendant choose to remove a case within thirty days from its receipt of an initial pleading that does not reveal on its face that the plaintiff is seeking damages in excess of the jurisdictional minimum, the federal court may either: (1) look to the petition for removal, (2) make an independent appraisal of the amount of the claim, or suggest that the defendant is free to do so, or (3) remand the action. *Rollwitz v. Burlington Northern R.R.,* 507 F.Supp. 582, 585 (D.Mont.1981); *Coleman v. Southern Norfolk,* 734 F.Supp. 719 (E.D.La.1990); See also Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3725 at 423, 426–27.

*B. Other Paper*

Chapman's second contention is that even if the initial pleading did not state a case that was removable pursuant to the first paragraph of § 1446(b), Powermatic's removal was st ill untimely pursuant to the second paragraph of § 1446(b). The medical bills and demand letter delivered by Chapman to Powermatic before it was sued revealing that Chapman was seeking damages in excess of $50,000, Chapman contends, were "other paper" within the meaning of the second paragraph of § 1446(b). Therefore, Chapman contends, Powermatic's receipt of that "other paper" (medical bills and demand letter) before it was sued, revealing that the amount in controversy exceeded $50,000, coupled with Powermatic's receipt of the initial pleading revealing complete diversity of citizenship between the parties, triggered the thirty-day time limit of the second paragraph of § 1446(b). In other words, Chapman contends that "other paper" for purposes of the second paragraph of § 1446(b) may come prior to the defendant's receipt of the initial pleading. And if this occurs, Chapman contends, that the thirty-day time period begins to run from the time that the defendant received the initial pleading.

Chapman bases his contention on the opinion of the district court in *Central Iowa Agri–Systems v. Old Heritage Advertisers and Publishers, Inc.,* 727 F.Supp. 1304 (S.D. Iowa 1989). In *Central Iowa,* the plaintiff's initial pleading did not allege a specific amount of damages, but the plaintiff had sent the defendant a demand letter before he sued in which the plaintiff stated that he conservatively estimated his damages to be in excess of $40,000.[7] That pre-suit demand letter, the court held, was an "other paper" for purposes of the second paragraph of § 1446(b) from which the defendant could ascertain that the case was removable. Therefore, the court held that the defendant's removal of the case was untimely because the defendant did not remove within thirty days from its receipt of the initial pleading.

We decline to follow the district court's opi nion in *Central Iowa* and consequently reject

---

[7]The minimum jurisdictional limit of the federal court applicable at this time was $10,000.

Chapman's contention, because we conclude that both are in conflict with the plain language of the removal statute. The plain language of the second paragraph of § 1446(b) requires that if an "other paper" is to start the thirty-day time period, a defendant must receive the "other paper" after receiving the initial pleading.[8] The second paragraph of § 1446(b) applies by its terms only "if the case stated by the initial pleading is not removable...." 28 U.S.C. § 1446(b). More important, the second paragraph of § 1446(b) requires that the defendant remove the case, if at all, within 30 days after receipt of an "other paper" from which the defendant may first ascertain that the case is removable. Logic dictates that a defendant can "first" ascertain whether a case is removable from an "other paper" only after receipt of both the initial pleading and that "other paper"; and therefore the thirty-day time period begins to run, not from the receipt of the initial pleading, but rather from the receipt of the "other paper" revealing that the case is removable. Chapman would have us adopt a rule which would be clearly inconsistent with the plain language of the second paragraph of § 1446(b), which states that "a notice of removal may be filed within thirty days after receipt by the defendant ... [of an] other paper from which it may first be ascertained that the case is one which is or has become removable...." By its plain terms the statute requires that if an "other paper" is to trigger the thirty-day time period of the second paragraph of § 1446(b), the defendant must receive the "other paper" only after it receives the initial pleading. Finally, we believe that our holding that the "other paper" must be received after the filing of the initial pleading is supported by the recitation in the second paragraph of § 1446(b) of the words "amended pleading, motion, order" before the words "or other paper," which clearly refer to actions normally and logically occurring after the filing of the initial pleading. Clearly the answer to interrogatory which triggered the filing of the notice of removal in this case is such an "other paper."

We find the plain language of the statute to be clear in this regard and as such we are bound to follow it. "[I]n any case requiring statutory construction, the High Court has instructed us to

---

[8]We express no opinion as to whether the medical bills and demand letter would otherwise be adequate as "other paper" for purposes of the second paragraph of § 1446(b).

adhere to the plain language of the law unless "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *In re Meyerland Co.,* 960 F.2d 512, 516 (5th Cir.1992), (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). We conclude that adhering to the plain language of the second paragraph of § 1446(b) by requiring that an "other paper," in order to tri gger the thirty-day time period, be received by a defendant only after that defendant has received the initial pleading does not "produce a result demonstrably at odds with the intentions of its drafters," but, instead, produces a result that is entirely consistent with the intentions of its drafters. *Id.*

In summation, we hold that Powermatic timely removed this case because: (1) the initial pleading was not removable pursuant to the first paragraph of § 1446(b), since it did not reveal on its face that the amount in controversy was in excess of $50,000; and (2) the medical bills and demand letter received by Powermatic did not begin the running of the thirty-day time period of the second paragraph of § 1446(b), since Powermatic received the medical bills and demand letter before it received the initial pleading.

For the foregoing reasons, the judgment of the district court is AFFIRMED.